Good afternoon. I'm sorry you had to sit here so long, but we have some heavy lifting to do on some other cases today. You want to step up and identify yourselves for the record, please. Good afternoon, Your Honors. My name is Reuben Edlin and with my colleague, Laura Lang, we represent the Plaintiff's Office. Good morning. I'm Jennifer Erickson-Locke on behalf of the City and City Defendants. And we're going to pretend I'm here at the hospital. Have you decided how you're going to split your time? We did. Okay. I'll be going first with ten minutes. Okay. And I'll just address the alternative round. Okay. And you can save out any portion you wish to respond to both of them. You've all been here before, so you know how the game is played. I think you can safely assume, Counsel, that Mr. Edlin, that we're familiar with your briefs. I'm sure, Your Honor. We're familiar with your briefs. Yes. So you can proceed. You don't have to spend a great deal of time on the facts. I will not do that because the facts in terms of the issue before this Court, or at least the principal issue, or not the debate as the Court is aware, the principal issue in this case, is whether legislative decisions regarding property rights of opposing parties must not, in compliance with constitutional principles, violate applicable laws enacted by that same authority. In this case, as the Court is also aware, the Chicago City Council, in violation of its own zoning laws as the trial court held, approved a zoning change sought by the defendant hospitals at the request, as the hospital defendants point out, at the request of the mayor of Chicago, and over, of course, the objection of plaintiff appellants. Incidentally, you did receive the Dunlap case from your opponents. I did. And, Your Honor, I will intend to address that after the introductory. I just wanted to make sure you had that. Yes, I realize that, Your Honor. Have you traced the history of 17-1-1002 in terms of when it was adopted by the City Council? It was adopted a long time ago, Your Honor. Do you read that as being binding on all future City Councils? Absolutely. This is the restrictive reconciliation. Right. So the more restrictive provision is the one that imposes greater restrictions or more stringent controls on development. It is binding. That is, in effect, a prior City Council binding future City Councils with respect to what they can do. That's, well. Do you know of any other legislature that faces the same imposition? Absolutely, Your Honor. It is a common provision. I tried to find out last night after I found out that at the village of Schaumburg in the Dunlap case, they have the same kind of provision, but for reasons which I can get into, that was not even mentioned, I don't think, by counsel on either side, nor by the court. But reconciliation is a common provision for state legislatures. I'd be happy to research this. No, you don't have to do that. But I think it is a common one. into the preservation of its prior zoning rules without permitting any kind of change of heart or turnaround, no matter how broad or how narrow. Oh, no, Your Honor. They can go back and amend this. They can go back and amend. They can. This court and the Supreme Court has held many times that property owners in the city have the right to providing notice and reasons and so forth, have the right to change their zoning laws. What do you do with the home rule powers that disengages the local legislature acting on these ordinances from any obligation to the state zoning? Oh, a home rule, I think the law is very clear now, a home rule entity does not have to comply with state zoning laws of its own kind unless there are some exceptions to that. So it is strictly being restricted by its own prior pieces of legislation. It is restricted by its own current pieces of legislation as well as the Constitution. I do not think that the fact that Chicago is a home rule district makes any difference in this case or in the other cases that we see. To be more precise, we're not talking about whether it's restricted, but whether it's reviewable for violating that restriction or whether it should be treated as any other legislative act subject only to considerations of due process that apply to general legislation, which in this case might incorporate some of the LaSalle factors, depending on how you read the Mapleton case, but would limit the scope of our review of that legislative action, which may be a violation of its own. Your Honor, I would agree with Your Honor. I think that's what the Court holds, that this Court has power to set aside a legislative act only if it is in conflict with the Illinois or the Federal Constitution or some other. But you're trying to get around that very, very ingeniously, if you can prevail, by simply going in the circle of saying, well, while we can't attack it frontally, we can attack it through the back door, which is to say that, okay, we can't review whether it's in compliance, but we can't review whether it's in whether we can't review its compliance with its other legislation. But if it's not in compliance, it's violating due process. That's basically what I'm saying. Your Honor, because there has been a determination and a re-ruling or reaffirmation by Judge Hall at the trial level that these ordinances were violated. Right. And our review of that is what? The standard of review, I would suggest, Your Honor, doesn't make any difference whether it is a rational basis or a substantial relationship. Now, I know, Your Honor, this Court in the Schomburg case decided that the review standard there was a rational basis. Could you come up with the idea that the subsequent legislation that the city adopted with respect to the hospital, that they were void because of noncompliance with 17.1.1002? Well, that's only one. Could you use the word void? That was only one ordinance. Okay. Our position, again, is that it violated three ordinances, at least three, and possibly the fourth, and that that violation, that violation, that refusal to, well, the violation of those ordinances is a per se violation of due process. Which kind of steps on and negates landmark and its clear provisions. Even Clarence, I think, is impacted with that approach. And the only way you can distinguish those cases is to say, well, the Constitution wasn't the factor there. But that's kind of the good lawyer, you know, that you are. You know that that's not a very strong position. Well, Your Honor, if this court in Living Word, what, eight years ago I have, but at the time. I remember that very well. In Living Word, this court held specifically that nothing in landmarks took away the power of this court to view legislative acts under the Constitution. But the Constitution was traversed. If your standard of, if your interpretation of due process would be the orthodox application, then landmarks itself would violate the Constitution. No, Your Honor, because it wasn't raised, and I don't think. Well, that's what I was talking about. Well, it was not raised. It was not raised. But again, because it was not raised, it was not in the air. It was not in the air of, in the contemplation of the parties. That's a very tough position to assert when you're an intermediate court and the Supreme Court gets the last word. Well, Your Honor, I know that sometimes, depending on whether. The city suggests without citation to anything in particular that the city council, like any legislature, always has the right to amend its ordinances. There is an archaic provision in Illinois law called implied amendment. When you have two ordinances, both adopted by the same body. And you cannot resolve without going, and you have to admit on their face that they conflict. Then the general rule of statutory construction is that the most recent one is the one that the legislature is presumed to have adopted, and it implied that he amends the earlier one. Now, why wouldn't that be a rational way to look at this particular case? Admit it. If the city completely ignored some of the provisions, as you pointed out, in the existing housing ordinance, and went ahead and did some things specifically for this particular plot, why can't it just say they impliedly amended the ordinance? Well, Your Honor, that issue was raised and briefed before Judge Hall. And my recollection... I didn't see a great discussion of it here. There's no discussion. We didn't address it because the... Well, they did have one line in their brief about they can always amend. They can always amend, but not impliedly. I believe, at least in zoning cases in Illinois, and I'd be happy if the court thinks this is a dispositive issue to file a short memorandum on this. They can always amend, but not implied. They can amend. They have an absolute right to amend. So if they had gone back and amended the statute to just obliterate that one section, you're out of here. Exactly, exactly. And right into that point, as we say, why did the city council spend two years in the first massive overhaul of the zoning ordinance since 1957? Why did they spend that time if they are free, within constitutional principles, to ignore it? To violate it. I think ignore it. Or to impliedly amend it. Or impliedly amend it. Why didn't they just do away with the zoning code? With that section. With that section. Which purports to impose on future city councils restrictions with respect to their legislative power. No, I think as long as that... I asked you how long that particular provision has been on the books. You said 1.102. Yeah. Well, the easy way around that is to amend and delete the conflicting provision. But isn't it, for that matter, and I don't want to dwell on this because it's not terribly central to the discussion, but isn't it the conventional area of departure from its own legislation in granting special uses or, in this case, institutional development projects? No, Your Honor, I don't think it is standard. It is not standard. It is the conventional operation of the legislature. I do not believe it is the conventional way of operation of the city council. And I would say, based on some personal experience, that this is an aberration. But it is one that has, as the defendants point out, however this Court decides the issue with, it does. It is going to have ramifications. We would say, if you hold in the plaintiff's favor, these are good because it makes us a government of laws and not measures. Mr. Hedlund, when you say it's an aberration, you mean, I think, that the office that grants the commission or the legislative body before whom you are a supplicant for a divergence will choose to stand on its old, preexisting rules or ordinances where it doesn't feel any compunction or merit in moving from it. So, sure, it can be used as a fallback by the legislature to say, hey, we've got laws, we've got rules. Or it can say, well, we want to consider your case to change the rule or modify it in your particular case. But, Your Honor, if that kind of choice is left to the individual elected leaders or appointed leaders' decision, where are we? Well, it's based on hearing and based on the measure of control extended by the LaSalle factor type of considerations. You still have to answer to due process and the Constitution. So you don't have a totalitarian situation? That is why we're here, because they do have to adhere to constitutional standards. I would say that LaSalle, while it sets out six factors, the opinion makes clear those are only among the factors that can be centered. That's why I phrased it the way I did. They don't have to do it. But if I may, let me ask you one question. Yes. What is the big objection that your client has to this? Wholly apart from the position that we are taking? I mean, the real objection. What is the real objection? Well, the real objection is that in the lot right to the north of their buildings, which has been a low-density R4 zoning for I don't know how many years, but for a long, long time. Well, objections are normally it's going to take away a view, it's going to affect the traffic pattern. What is your objection here? It is the bulk and the mass of something right in front of the building removing the parking lot that is there. You're talking about view? You're talking about view? No, Your Honor, I'm talking about light and shadow. Light and shadow, okay. You have no right to a view. That is very, very clear. No, it's losing the parking lot, the traffic congestion. I'll tell you probably the most important objection here is the failure, well, is to rewrite a loophole in what's called the sunset provision. In other words, they don't have to do anything. Except start. That's their analysis. They don't have to do anything but start the project. They don't even, well, they don't, they've already quote according to them and according to the plan development that was approved, they have started it by putting up a canopy and adding some shrubbery. Right, right. That's all they have to do. That's from their point of view. That's all they have to do. That's all the plan development says they have to do and all the other sunset provisions are eliminated and it was only about 10 years ago when plan developments had a shelf life, if you will, of 20 years. And the city council decided, and I think it was Alderman Materis, the city council said, wait a minute, this is allowing land bank. People are just going to buy property and they're not going to develop. And so the six-year provision was put in. The sunset provisions were added. And that's right. And one of your arguments is that this particular project violates that. You don't actually hear that your people relied on the zoning when they purchased their units in the condos? They did with the knowledge. I mean, I didn't see that in the record. Well, I think it's alleged. It was in the record in front of the plan commission. There's no evidence. They did rely, knowing that, of course, the zoning can be changed at any time, but they did rely that the lot immediately north of them where they want to put this, we say, use of an office building that violates the ordinance, that they relied. As property owners, we suggest, are entitled to rely on the city council when it comes to zoning, or I'm sorry, when it comes to rezoning, will abide by its own laws. Why should they be able to rely on that if they have an amendment right where they can do it through amendment? Is there some sort of inertia that's incurred in putting them through a formal process of amendment? There could be. In Arizona, there's a good deal of expense involved. Hearings the whole nine yards. Pardon me? Hearings the whole nine yards. Yeah. I mean, it's a hearing, and now with the no vote review, and I know there's some debate about what exactly that means. Somebody could have. One of the very able lawyers in the city council, in the corporation council's office, could have suggested that they time out. Before you go ahead and do this, you better go back and amend 17-1002 just to be on the safe side. They could have done that, couldn't they? They could have done that. They could have specifically exempted this ordinance from that ordinance. Exactly. And there is under. . . I mean, this is the city council. Where do these 50 elected officials, there are 50 of them. There are, correct. Yes, you're right. They can do pretty much anything they want within constitutional bounds. And certainly, one of the things they could do is change the zoning laws. Exactly. Overnight. And, Your Honor. . . They can eliminate. . . They can eliminate the sunset. . . Yeah, but doesn't the Constitution provide that any zoning change has to be within the general health, welfare. . . Under the rational means test, the rational basis test, it would appear that subject to constitutional principles, that all they need to do is a rational means of achieving a public or a private. . . Which is not. . . Under the substantial. . . But that last sentence, that last sentence in. . . I'm sorry. Go ahead. Go ahead. Sorry. That last sentence in 1-002 is really a policy matter. The more restrictive provision is the one that imposes greater restrictions or more stringent controls on development. They can change that overnight. They could, Your Honor. They could turn right around and say the more liberal provision is the one that allows more expansive development. That's a public policy decision for the city. That's correct. And nobody's going to quarrel that there are constitutional implications in that. Or either. Not in. . . I don't think there is a. . . I haven't thought about it, Your Honor. But they made a policy decision. I don't think that that is. . . That the greater restriction on development. . . It's a provision required by the Constitution. Yeah, but it's the policy of the city that the more restrictive provision. . . Right. Is the one that's to be preferred. How would you ever build a McCormick Place if that were in place? McCormick Place. . . Any large project. If that were in place. . . Yeah. How would you. . . How would you. . . Because you can do it. There's a way to do it. There's a way you can get rid of McSpeel. And. . . I'm not sure the city would want to use that as an example. We can go down to the Planning Commission when that issue came up. I'm very clear with it. But I would point out that the easiest thing for the city council to have done when they were. . . The plan development is to make these guidelines not mandatory. And that's what we suggest is one of the reasons why the Village of Schaumburg case is very distinguishable. Because if you look at the variation or variance. . . Variation. . . They're subject to. . . Zoning. Exceptions. It's got all kinds of exceptions. We provided counsel for both parties with a copy of that ordinance. I'd be happy. . . No. . . So the court doesn't need to go back into the record. But that's one difference. There's not the mandatory requirement. There was also in Schaumburg or in the Dunlop case. . . There's no violation of that ordinance. It was argued that they just didn't. . . Let's put it this way. I think William Faulkner, when he attended a literature class at Berkeley or someplace like that. . . Where they were discussing his books. . . He left by saying, you know, I didn't know I was thinking of those things. But it's really right. Well, I would agree with the first half of it. I didn't know that I was making those distinctions when I was writing that opinion. Do you have any case that shows that a hospital placement in an area like this. . . Would that be your reasonable use? Oh. . . We don't debate that. There's already a hospital there. I know. But we say it's unreasonable and socially unreasonable to put an office building in the lot immediately north. . . Somebody has an office building across the street on Sheridan Road. My basic argument is the legislature, in this case the city council, is bound by its own ordinances. And they didn't follow their ordinances in this case. That is our position under the constitutional provision. . . Pat, I should be limited to that. Pardon me? I think you ought to be limited to that. Well, I think the law is clear. I think that that is the reading of LaSalle. It's the reading of living word. And I might say that of the three cases which the defendants cite are old. . . Treadway and Kane. But in Continental Bank, the defendant hospitals concede that that case sustains the possibility of a holding. That violation of your own zoning ordinances legislated is a violation of due process. And that would be an interesting issue for us to hear from the city about right now. Right. Before we understand your position. Is there anything else you want to stress? Well, I do. . . Going to. . . Unless I'll have the opportunity. . . You will have the opportunity.  Oh, of course. I would only say at this point, we argue that the review, the standard of review for those is clearly erroneous. Because they were mixed questions of fact and law. And so that. . . Okay. And we think they're very well reasoned things of Justice Hall Price. Thank you, Mr. Chairman. Thank you. Ms. Erickson-Hock. Yes. Good morning. How are you? Am I pronouncing you? Is it Bach? That's correct. Okay. May it please the Court. The Illinois Supreme Court has made plain that a cause of action does not lie. Simply because a home rule unit doesn't follow its own ordinances. And while plaintiffs here seek to avoid this result by framing their claim as a due process argument. They allege no facts relevant to a traditional due process analysis. Instead, they're asking this Court to create a brand new rule. Making conflicts between ordinances a per se due process violation. Well, they have a lot of other states that they cite to have walked into that position. They cite cases from several other states. Although I would note that those cases we believe are fully distinguishable as dealing with administrative bodies. As opposed to legislative bodies. And dealing with charges to procedures. That's a distinction that no longer applies under the new ordinance. Because there's no distinction between administrative versus legislative. Under the new, I believe it's section 1113.25 of the Illinois Municipal Code. It actually says that all land use decisions are now categorized as legislative decisions. So I would disagree that it says that there's no distinction. I think it actually pushes them all into. For purposes of de novo review. Correct. But we would distinguish those cases on that basis. It's also a procedural due process challenge. I think the Florida one is not a commission case. It's a legislative case. You've dealt with the new briefs. Okay. You suggested that the office building is in substantial compliance. Of the four issues that the trial court addressed with respect to where C suggested that this ordinance violated the earlier ordinance about least restrictive. I'm trying to remember now. Substantial compliance was one of the arguments you made with respect to the building. Refresh my recollection again about the other three. The lapse provision. That's just a statutory interpretation that you could both argue about all night long. If I could clarify. If we brought into your argument on all those four, would we even have to address the constitutional issues? That's really the question I wanted to ask. If the court agrees with us that there is no conflict between these. If we tried to read the two statutes as to be absent any conflict. Correct. Then you would not need to reach the constitutional due process. Evidently the constitutional issue, and I'm really opposing this because you may want to add something to it in your rebuttal. The constitutional issue is exclusively based on the fact that there is a disregard or alleged disregard of its prior ordinances. It has no viability beyond that since, at least that's what I gather from the argument that Mr. If they did it by formal amendment, it would pass muster. So obviously then, an amended statute, if it were formally amended and correctly amended, would not pose any due process problem. That's how I understand the argument. That's how we understand their argument as well, that they're alleging a due process violation arising solely out of an alleged conflict among the statutes. We would disagree. We believe that the city council took all necessary steps to create an exception for this particular plan development. But in any event. And they could have added a sentence right at the beginning of this ordinance, too, and said that the provisions of 17.1.1002 will not apply to this ordinance. They could have said that, too, couldn't they? Well, they could have, and I'd be actually very happy to address it. They could have excused themselves from the application of 1002 if they had said it explicitly. I think they could have said it. That's a softball for you. Of course they could have. The only question is why didn't some lawyer in the city corporation council's office recommend that they do that? I think the relevant question is whether or not failure to do that rises to the level of violation of due process under the United States Constitution, which is a notoriously difficult standard for the plaintiffs to meet in this case. Or is it? My old favorite, you know, saw an implied amendment anyway, so. Which we would agree with as well. Here there was no doubt as to what city council was trying to do. Is there any argument to be made on whether this is a facial due process argument or an as-applied due process argument? We believe we prevail under either standard, but the city's position is that this is a facial due process challenge because. . . Since it argues generally rather than specifically that it's only unconstitutional because it violates its own rules. Right, and because they're trying to strike down the entirety of Ordinance 1019. I think we understand your position. We want to hear from the hospital person. He's really straining it a bit. We've read your brief. We'd like to move along. Is that okay? Sure. Let me just briefly sum up. Sum up. Because the law is clear that a conflict among ordinances without more does not rise to the level of a denial of due process. And because the plaintiffs point to no facts to satisfy a traditional due process analysis. . . We would urge this Court to affirm the judgment of the Supreme Court. Thank you. I guess I'm in the unbendable position of being the last lawyer to speak on a very long session before the panel. I'm really here to address the inconsistencies and are there. But before I get there, I did want to say one thing, which is this particular IPD really does show why the rational basis review is appropriate for a municipal body that's acting legislatively. Why do I say that? Because if you look here at what happened, the city reached out to the hospital. That's in the record. The city said to the hospital, we don't want another neighborhood hospital going away. So let's get an IPD together. Let's get a blueprint for the future for what you're likely to do, for what you'll be permitted to do. And let's lock you into this spot so there won't be developers coming in and taking away lakefront property in the future. And with all these smart lawyers looking at this, why didn't they make sure that the IPD wouldn't be in any conflict with the general zoning provisions? Well, I have two answers for that, Your Honor. First, as I get into the three specific inconsistencies the court found, I'm going to tell you in each case how those smart lawyers really did think and try hard to make sure the ordinance was in compliance. The second answer is, again, you've got to look at the entire process. Because it wasn't just that the city asked the hospital to do this. It was that after the city asked the hospital to do this, there were two years of community meetings, 30 of them. Almost all of them attended by Alderman Tunney. And after that, there was a full hearing before the plan commission with testimony, with evidence, with the condo association being allowed to cross examine. No one apparently is attacking this in terms of that kind of procedural due process, at least not with any seriousness, as I can see that. So it's still extraneous because you can have an as-is objection that is not geared to who started it. It's really a question of how the challenger determines to attack the statute that controls it. Exactly. And my point was exactly that, which is the way the court should treat that challenge is on a rational basis. Because you're truly talking about legislative action here. But to respond to Justice Cahill's specific point about why didn't one of the city lawyers do something here, well, let me give you the first example of the three alleged inconsistencies. The Chief just left. I hope we haven't... I hope my remarks have not made her unhappy. The first alleged inconsistency is this lapse provision. The lapse provision in the original, the underlying statute, not the IPD, but the underlying statute, has two parts to it. The first part says it lapses if you don't start construction within six years and proceed diligently thereafter. That is precisely stated in the IPD. That's the easy one for you. What about the floor area ratio? Okay, you want to jump to the floor area ratio? Yeah. That's the hardest one. Which is a density issue. It's a density issue. And I'll concede to the court that that's the hardest one, but I think we do have a very good answer on that one. And here's how it works. It's strict compliance, and what does it say? It says, with the floor area ratio standards applicable to the subject property immediately before approval of the plan development. Now you look at the plan development ordinance itself. What does it say? It has two sections, and here's where I'm coming to the point about smart lawyers and what were they doing to help their clients out. The ordinance proceeds by saying, be ordained. Section one, up zone. The up zone takes this completely into compliance with the FAR. Then they go to section two. Section two, we hereby adopt the IPD. Now, if you look at it from this angle, if the city council had taken section one of the ordinance and made it its own ordinance, taken them both, and then had made section two of the ordinance its own ordinance, taken them both. Why should it be able to increase the density? Well, they did it basically contemporaneously. Well, they did it in one ordinance. It's tough to sell some of us, at least, to the notion that a purely technical kind of operation gets us to focus off the focus of whether it was one act or two acts that did this. But even so, wouldn't they have to formally, according to your opponent, at least, have to go through a formal amendment process to up the density? Well, they did. Which is? What did they do? Well, there was an application. There were these 30 meetings. There was this plan commission meeting, and then there was this ordinance, and section one said, let's raise the density by changing the underlying act. The question is, what's the modus operandi, the method by which a formal change in an ordinance would take place, and does that meet that definition, or is this an afterthought? Well, I don't know that it's an afterthought, but I was really directing my comments to Justice Cahill's question. Well, I'm sitting here too. No, don't take me too seriously. Don't get upset because I said, where were the lawyers? I mean, that was just, I was being argumentative. No, no, and I understand that, but to your point, Ms. Solomon left the room, though. I feel guilty. I think there is a different process to actually amend the underlying zoning code, but given the case law, given landmarks, Hanna, Duncan, it's a legislative process here, and it's the city council acting legislatively, and they're not acting arbitrarily. But we're talking now, we're spending some time here under the aegis of Justice Cahill's wish, or hope, in which I share, that we might be able to decide this case without dealing with the constitutional issues. So basically, what we're talking about is the conformity of this IPD with pre-existing law, and now you're shifting back to the argument that gets us back into the constitutional issue. I mean, that's not to. But to stick with that, but then to stick with, does it conform to existing law? I'm not making a fetish out of this. I fully understand, but just stick with Your Honor's point. It is consistent with existing law because the ordinance, it uses very careful words. It doesn't say immediately prior to enactment. It says immediately prior to approval, and you have this two-section ordinance, which granted was one part of it. You've got a couple of other little tricky problems here, and they're cumulative. Just one of them would be fine, but there are several of them here, like turning a private medical building into a public medical building through the artifice of substantial compliance or auxiliary use, whatever. You don't need to get there, though, because you've got that argument backed up, too. But it's almost like the dike is springing leaks all over the place, and you're running around to put your fingers in them when there would have been a much easier way to deal with it. But isn't that exactly why the Supreme Court has said we have to treat these on a rational basis when they're acting legislatively? Because, you know, in good faith, they made their efforts to comply. They thought they complied. And now you've walked yourself right back into the constitutional argument. They are interrelated. I appreciate Your Honor's patience. I just have one question. Sure. Why should we have any laws at all if the city can do whatever they want to do? Oh, because the most important part of the answer to that is the process, and the due process that was given to the Condo Association. The years of meetings, the formal evidentiary proceedings, the testimony, the reports, the traffic engineers who came in. This wasn't done willy-nilly in the dark of night. It certainly wasn't mixed field, was it? No, it wasn't. Okay. Mr. Hedlund, you have the final word. Very briefly, Your Honor, going to your observation about the leaps in the roof. If all we were dealing with was one violation, that would be a different case. But here we've got, I will suggest, a carefully concocted means of getting around the standards for FAR, getting around the standards for the sunset provision, getting around the standards of use. How does the violation of these ordinances avert the conclusion that there's a rational basis for the substantive implementation of the new ordinance? Because, Your Honor, I submit and I take the position that it is not rational, regardless of the propriety of the purpose, it is not rational to violate your own standards. And I think that that's a cardinal principle recognized in so many other states. It is. That's why the question came up. It is not rational, regardless. If we go along with you, what's going to prohibit them from redoing it the right way and getting it anyways? Nothing, Your Honor. Nothing prevents them from doing it the right way. Nothing has. And you mentioned mixed field more than once. I'll tell you what happened in mixed field. It first came before the… You don't have to tell us about mixed field. Well, in any event, I would say that as far as the details and the support for the various violation determinations, I would rely, I don't have much to add or anything at all, on Judge Hall's reasoning. She spells it out very clearly in each one of these. And I've… Oh, I will say one thing. The ordinance about… It has to conform to the FAR or both. In the ordinance immediately preceding adoption, what it says is immediately applicable. This one was never applicable because in the same document it gets removed. So I would say that finally in this one we take the position that it makes no difference in Illinois, nor I think it should in other states, that constitutional, this court's power to rule on the constitutionality of the issue here doesn't matter whether it's from an administrative agency or it's from a legislature. And I don't think there's any difference. We also take the position it doesn't make any difference whether this was a facial challenge or as applied. And I've always, I've already said, and I'll just repeat again, that violating laws which duly elected representatives have enacted by those same representatives is not a rational means of achieving a proper purpose. Let me just ask one more question along those lines. Before the amendment of the ordinance to equate or to eliminate at least a portion of its analysis, the difference between administrative and legislative, what category would you put this in? I think this was probably administrative when we're talking about a single zoning change. I think that would probably, but I think the adoption 1113.25 has removed any distinction there. And, of course, it's clear in other states that I believe that. That's the question as to whether it removed any distinction globally or whether it's only from north to northeast. That's a, in this case, I don't think it makes any difference, as I think the same principle would apply whether administrative or legislative. Your Honor, thank you very much. Counselors, thank you all. And will you make it clear, Ms. Bach to Ms. Solomon, that my reference to the lawyers and what they could or might have done was purely argumentative and devil's advocacy and in no way intended to imply. I don't. Okay. Because I didn't, I certainly didn't intend that. The case was well argued and well briefed by everyone.